IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ANTWON DYLAN JORDAN,

                Plaintiff,

v.                                              OPINION and ORDER

CFSL ROSEMARY CORTINEZ, CO II TERRY         23-cv-475-jdp
WOJAHN, and HSU RN NICOLE SCHWALLER,

                Defendants.

---

Pro se plaintiff Antwon Dylan Jordan alleges that he was injured in an accident in his prison's food service area. Because Jordan proceeds in forma pauperis, I must screen the complaint under 28 U.S.C. § 1915(e)(2)(B). I must dismiss any portion of the complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from an immune defendant. I must accept Jordan's allegations as true and construe them generously, holding the complaint to a less stringent standard than one a lawyer drafts. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). I may also consider documents attached to the complaint that are central to its allegations. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). I will dismiss the complaint for failure to state a claim but allow Jordan to amend his complaint to fix this problem.

ALLEGATIONS OF FACT

Jordan is incarcerated at the Kettle Moraine Correctional Institution (KMCI). On September 2, 2022, a food cart's wheel fell off, which caused the cart to tip into Jordan and defendant Cortinez. As Jordan attempted to hold the cart up, a rack holding pans and food fell

on them. Jordan complained of ankle pain, back pain, and eye pain from exposure to food containing oil and vinegar.

Jordan was transported to a hospital. X-rays of Jordan's ankle and back were negative, but he was diagnosed with right ankle and low back sprains. Nurses placed Jordan in an Ace wrap and stirrup splint. Jordan's eyes were irrigated, he received eye medication, and was prescribed ibuprofen. Rest, ice, compression, and elevation therapy was discussed and Jordan was instructed to continue ibuprofen at KMCI. Jordan was discharged that day.

Nondefendant Tracy Plaskey, an advanced practice nurse prescriber, examined Jordan on September 6, 2022. Eight days later, Jordan complained that he was still having back and chest pain and felt lightheaded. The next day, medical staff responded that he had an appointment with nursing on September 16, 2022.

On September 23, 2022, Jordan complained of "tight back pain." A day later, medical staff responded that he had a follow-up appointment on September 28, 2022.

The following day, Jordan complained of "so much pain" in his back and chest and asked when Plaskey would examine him. Medical staff responded that he was scheduled for October 11, 2022.

On October 1, 2022, Jordan complained about back and chest pain that was "too hurtful" and lightheadedness. Defendant Schwaller, who received the complaint a day later, scheduled Jordan for a nursing sick call on October 3, 2022.

On October 20, 2022, Jordan complained of chest pain and lightheadedness. Schwaller received this request the following day and scheduled Jordan for a nursing sick call that day. Schwaller, Plaskey, or both examined Jordan, documenting that his peak flow and EKG were

2

normal. Schwaller, Plaskey, or both ordered a chest X-ray and added that Jordan was "still cleared to work."

On December 26, 2022, Jordan complained that he was "still in unbearable pain" because of his back problem. Schwaller scheduled a nursing sick call for the following day.

## ANALYSIS

### A. Claims based on the accident

Jordan alleges a claim under 42 U.S.C. § 1983 based on the accident, but he does not allege who was responsible for it. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (individual liability under § 1983 requires personal involvement in the alleged constitutional deprivation). Jordan sues Cortinez and defendant Wojahn, but his allegations do not suggest that they caused it. *See Ortiz v. City of Chicago*, 656 F.3d 523, 539 (7th Cir. 2011) (section 1983 has a causation requirement). Cortinez (food service leader) was a victim in the accident, and Wojahn (correctional officer) simply responded to the accident and wrote an incident report. In any case, Jordan's allegations about the accident, at most, suggest negligence, which does not violate the Constitution. *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). I will not allow Jordan to proceed on this claim, or to replead it in his amended complaint because it's futile. But Jordan may be able to bring a Wisconsin-law negligence claim based on the accident if he complied with the statutory requirements for such a claim.

### B. Medical care claims

The Eighth Amendment prohibits prison officials from consciously disregarding the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a medical care claim, Jordan must allege that he had an objectively serious medical condition and

3

that defendants consciously disregarded that condition. *See Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017). I will assume for screening purposes that Jordan's ankle and back sprains and related pain are serious medical needs.

Jordan must also allege that defendants "actually knew of, but disregarded, a substantial risk to [his] health." *Id.* Conscious disregard involves intentional or reckless conduct, not mere negligence. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).

Medical personnel provides inadequate medical care by choosing easier treatment that they know is ineffective. *See id.* at 441; *see also Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) ("A prisoner may establish deliberate indifference by demonstrating that the treatment he received was blatantly inappropriate."). A significant delay in effective medical treatment would also support a medical care claim, especially where the result is prolonged and unnecessary pain. *Berry*, 604 F.3d at 441. A correctional officer consciously disregards a prisoner's medical needs by "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05.

I will not allow Jordan to proceed on a medical care claim. Jordan does not allege, and his allegations do not suggest, that Cortinez or Wojahn consciously delayed or denied his access to medical care. Jordan was taken to the hospital after the accident, where he received a variety of treatment and was prescribed ibuprofen.

Jordan also sues Schwaller (a nurse), but his allegations do not suggest that she consciously disregarded his medical needs. Jordan alleges that Schwaller received two of his medical requests. In both cases, Schwaller promptly scheduled Jordan for nursing sick calls. At one sick call, it was documented that Jordan's peak flow and EKG were normal, which doesn't suggest that his medical complaints were being ignored. Jordan does not allege whether he was

4

prescribed pain medication at KMCI. But Jordan was prescribed ibuprofen at the hospital, and does not allege that it expired or that he was otherwise deprived of it. The mere possibility that Jordan did not receive ibuprofen does not state a medical care claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."). If Jordan is suggesting that his ibuprofen was inadequate (he does not allege this), "[d]isagreement between a prisoner and his doctor . . . about the proper course of treatment generally is insufficient . . . to establish an Eighth Amendment violation." *See Pyles*, 771 F.3d at 409. In any case, Jordan's X-rays were negative, he was diagnosed with only ankle and back sprains, his complaints of pain were vague, and he was cleared for work. Jordan's allegations do not support a reasonable inference that his alleged pain was serious enough that treating it with ibuprofen was blatantly medically inappropriate. *See Iqbal*, 556 U.S. at 678. Jordan has not stated a medical care claim.

    I will allow Jordan to amend his complaint to fix the problems with his medical care claim. But I will not allow him to bring this claim against Cortinez or Wojahn in his amended complaint because it's clear from his allegations that he could not state a medical care claim against them.

## CONCLUSION

    I will allow Jordan to file an amended complaint that fixes the problems identified in this order. In drafting his amended complaint, Jordan should remember to do the following:

- Carefully consider whether he is naming proper defendants and omit defendants who did not personally participate in, or otherwise cause, a violation of his

constitutional rights. Jordan must take care to allege what each defendant did, or failed to do, to violate his constitutional rights.

- Jordan should avoid referring to several defendants together. For instance, if more than one defendant has taken a particular action that Jordan believes supports a claim, he should identify each defendant who took that action.
- Identify by full name all the individuals he wishes to sue in the amended complaint's caption.
- Omit legal arguments other than stating what types of claims wishes to assert.

ORDER

IT IS ORDERED that:

1. Plaintiff Antwon Dylan Jordan's complaint, Dkt. 1, is DISMISSED for failure to state a claim upon which relief may be granted.

2. Plaintiff may have until October 26, 2023, to submit an amended complaint that fixes the problems identified in this order.

3. Plaintiff must file his amended complaint on the court's prisoner complaint form, which the court will send him with this order. Plaintiff must fill out the form completely. If plaintiff requires any additional space to allege his claims, he may submit no more than five supplemental pages.

4. The amended complaint will act as a complete substitute for the complaint. This case will proceed on only the allegations made and claims presented in the amended complaint, and against only the defendants specifically named in the amended complaint's caption.

5. If plaintiff fails to comply with this order, I may dismiss this case.

6. The court expects the parties to treat each other and the court with respect. Any abusive or threatening comments or conduct may result in sanctions, including entry of judgment against the offending party.

7. Plaintiff must inform the court of any new address. If he fails to do this and defendants or the court cannot locate him, this case may be dismissed for failure to prosecute.

8. Plaintiff should keep a copy of all documents for his own files. If he is unable to use a photocopy machine, he may send out identical handwritten or typed copies of his documents.

9. The clerk of court is directed to send plaintiff copies of this order and the court's prisoner complaint form.

Entered September 26, 2023.

                              BY THE COURT:

                              /s/

                              _____
                              JAMES D. PETERSON
                              District Judge