IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ANTWON DYLAN JORDAN,

                    Plaintiff,

          v.                                          OPINION and ORDER

CFSL ROSEMARY CORTINEZ, CO II TERRY                    23-cv-475-jdp
WOJAHN, and HSU RN NICOLE SCHWALLER,

                    Defendants.

---

In response to my order, pro se plaintiff Antwon Dylan Jordan filed an amended complaint challenging the medical treatment he received after he was injured in an accident. Because Jordan proceeds in forma pauperis, I must screen the amended complaint under 28 U.S.C. § 1915(e)(2)(B) and dismiss any part of it that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from an immune defendant. I must accept Jordan's allegations as true and construe them generously, holding the amended complaint to a less stringent standard than one a lawyer drafts. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). I will dismiss the amended complaint with prejudice for failure to state a claim upon which relief may be granted, and I will direct the clerk of court to record a strike under 28 U.S.C. § 1915(g).

ALLEGATIONS OF FACT

Jordan is incarcerated at Kettle Moraine Correctional Institution. On September 2, 2022, a food rack broke and fell onto a food cart that Jordan was handling. Pans and food fell onto Jordan as he struggled to keep the cart from falling onto a coworker. Jordan complained of eye pain caused by food that entered his eyes and pain in his back and right ankle. Defendant

Gereau (licensed practical nurse) told Jordan to flush his eyes at the emergency flushing station. Jordan complained that his back and ankle pain was increasing and that the flush worsened his eye pain. Jordan was then transported to the hospital, where his eyes were flushed and he received X-rays of his back and ankle. Jordan was prescribed ibuprofen, given an aircast and Ace wrap, and discharged on the same day.

Four days later, Jordan saw defendant Plaskey (advanced practice nurse prescriber) for complaints of pain. Plaskey prescribed a five-day supply of cyclobenzaprine 5 mg, diclofenac, lidocaine, and topical cream. About a week later, Jordan filed a health services request stating that he had received only three days' worth of the five-day supply. The next day, defendant Nuck (registered nurse) answered the request and, a day later, Jordan was seen by Plaskey and defendant Schwaller (registered nurse). Jordan requested more cyclobenzaprine in a stronger dose, but Plaskey said that she could prescribe only a five-day supply.

Two days later, Jordan reinjured himself at work. Jordan told Plaskey, who said that he was "just okay." In five days, Jordan complained to the health services unit (HSU) about back pain. The request was answered four days later and, the following day, defendant Lisa Schneider (registered nurse) saw Jordan. The next day, Jordan complained about being in pain and he was told that day that he had a follow-up appointment in about two weeks.

Meanwhile, two days after his last complaint, Jordan complained to the HSU about pain. Schwaller answered the request the next day and, in one more day, Jordan was seen by Nuck. Jordan told Nuck that he was in pain and having trouble breathing, and Nuck told him to see Plaskey. Some time after that visit, Jordan complained that he was in pain and that his ibuprofen was ineffective.

On October 11, 2022, the scheduled follow-up visit was held. Plaskey prescribed Jordan celecoxib 200 mg to help with pain caused by inflammation.

In nine days, Jordan complained to HSU about chest pain and lightheadedness. Plaskey and Schwaller ordered X-rays and told him that his peak flow and EKG were normal. They also cleared him for work even though he pulled his back in mid-September while lifting boxes weighing over 25 pounds.

In late November 2022, Plaskey saw Jordan after he complained about back pain while lying down that caused him to cry in agony, though he could walk and stretch to obtain relief. Jordan asked Plaskey if anything could stop his pain and wanted to know why his low-bunk restriction was canceled. Jordan also asked for an extra pillow. Plaskey ordered X-rays, which were taken about two weeks later.

In two more weeks, Jordan complained to the HSU about pain and, shortly thereafter, was seen by defendant Je'anne Klein (registered nurse), who told him to return the next day to see Plaskey. Jordan told Plaskey that the pain was stopping him from sleeping well at night.

In mid-May 2023, Jordan was seen by Klein, whom he asked for a higher dose of his medications and a back brace. Klein told him to see Plaskey.

Jordan's next appointment with Plaskey was in late June 2023. Jordan told her that the celecoxib was ineffective and asked for "different meds to try and increase on" and a low-bunk restriction. Plaskey prescribed capsaicin pain relief cream, "certain other meds," and physical therapy. Jordan received five sessions of physical therapy the next month.

In late September 2023, Jordan asked HSU for an extra pillow to support his back and ease his back pain; he received the pillow two days later. About two weeks later, Jordan complained to HSU about sounds in his back while walking and asked for a low-bunk

3

restriction. Jordan was told that he would have to pay a copay and fill out a special needs request form. Jordan has yet to hear back about this request.

ANALYSIS

Jordan brings a medical care claim under the Eighth Amendment and a medical negligence claim under Wisconsin law. Jordan seeks damages.

The Eighth Amendment prohibits prison officials from consciously disregarding the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a medical care claim, Jordan must allege that he had an objectively serious medical condition and that defendants consciously disregarded that condition. *See Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017). I will assume for screening purposes that Jordan's ankle and back sprains and related pain are serious medical needs.

Jordan must also allege that defendants "actually knew of, but disregarded, a substantial risk to [his] health." *Id.* Conscious disregard involves intentional or reckless conduct, not mere negligence. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). A prisoner's "mere disagreement with a doctor's medical judgment is not enough to support an Eighth Amendment violation." *Cesal*, 851 F.3d at 722.

Medical personnel provides inadequate medical care by choosing "easier and less efficacious treatment" that they know is ineffective. *See Berry*, 604 F.3d at 441; *see also Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) ("A prisoner may establish deliberate indifference by demonstrating that the treatment he received was blatantly inappropriate."). A significant delay in effective medical treatment also supports a medical care claim, especially where the result is prolonged and unnecessary pain. *Berry*, 604 F.3d at 441.

I will not allow Jordan to proceed against Gereau on his medical care claim. Jordan alleges that Gereau told him to flush his eyes at the emergency flushing station after the accident. Jordan adds that, when he complained that his back and ankle pain was increasing and that the flush worsened his eye pain, he was transported to the hospital, where he was treated. These allegations don't suggest that Gereau disregarded Jordan's medical needs.

I will not allow Jordan to proceed on his medical care claim based on the allegation that Plaskey failed to prescribe more cyclobenzaprine even though he received only three days' worth of his five-day supply. Jordan alleges that, when Plaskey saw him four days after the accident, she prescribed four medications, including the five-day supply of cyclobenzaprine. This allegation shows that Plaskey did not disregard his complaints of pain after the accident. Jordan alleges that Plaskey declined to prescribe more cyclobenzaprine at their next appointment, but his allegations suggest that she did not have the authority to prescribe more, despite his contention that he failed to receive the full supply. In any case, Plaskey prescribed three other medications, and Jordan's mere disagreement with her treatment decision doesn't state a medical care claim. Jordan's claim against Schwaller is even weaker, as a registered nurse, she would not have the authority to override Plaskey's treatment decision or even prescribe medication.

I will not allow Jordan to proceed against Plaskey based on the allegation that, after he reinjured himself at work, she said that he was "just okay." Jordan doesn't describe his reinjury and this allegation is too vague suggest that Plaskey disregarded this problem. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

I will not allow Jordan to proceed against Schneider on his medical care claim. Jordan's only allegation about her is that she saw him one day after someone answered his complaint

about back pain. Because Jordan fails to describe what happened at this examination, I cannot infer that Schneider provided inadequate medical care. *See id.* Jordan may intend to proceed against Schneider based on the allegation that, even though he complained of pain one day after Schneider saw him, he had to wait for two weeks for a follow-up visit. But Jordan doesn't allege that Schneider caused this delay and, in any case, the allegation that he had to wait two weeks for a follow-up visit does not by itself suggest that this complaint of pain was disregarded. It's clear from Jordan's allegations that he was receiving some medication at this time, even if it wasn't the medication that he wanted. Furthermore, this complaint of back pain is vague, and Jordan hasn't alleged the existence of any objective medical evidence or diagnoses that would suggest that his back pain at that time was severe.

I will not allow Jordan to proceed against Nuck on his medical care claim. Jordan alleges that Nuck answered a health services request and that Plaskey and Schwaller saw him a day later, which doesn't suggest that Nuck disregarded that request. Jordan further alleges that, during a separate visit, Nuck told him to see Plaskey in response to his complaint that he was in pain and having trouble breathing. By itself, Nuck's advice to see Plaskey (Jordan's provider) doesn't suggest that she disregarded this complaint. Jordan doesn't describe what else happened at this visit, and his allegations fail to suggest that Nuck, as a registered nurse, could override his existing prescriptions or even prescribe medication.

I will not allow Jordan to proceed against Plaskey or Schwaller based on the treatment they provided, or failed to provide, at two October 2022 appointments. In the first, Plaskey prescribed Jordan celecoxib 200 mg to treat pain caused by inflammation, which doesn't suggest that she disregarded his medical needs. Plaskey may have been able to prescribe this medication sooner, but "the question whether . . . additional  . . . forms of treatment [are]

indicated is a classic example of a matter for medical judgment." *See Estelle*, 429 U.S. at 107. Also, Plaskey had prescribed Jordan other medications; there is no indication that she was ignoring his complaints of pain. *See Cesal*, 851 F.3d at 723 (rejecting medical care claim where prisoner was "under active treatment; no one was ignoring him").

In the second visit, Plaskey and Schwaller ordered X-rays and told Jordan that his peak flow and EKG were normal. As I determined in my initial screening order, this allegation further shows that Jordan's medical needs weren't being disregarded. Jordan contends that Plaskey and Schwaller improperly cleared him for work even though he pulled his back in mid-September. This allegation expresses disagreement with their medical judgment, which doesn't state a medical care claim.

Jordan alleges that, a little over a month later, Plaskey saw him after he complained about back pain while lying down that caused him to cry in agony, but that he could obtain relief from by walking and stretching. Jordan allegedly asked Plaskey if anything could stop his pain, complained about the cancellation of his low-bunk restriction, and requested an extra pillow. Jordan doesn't specifically allege what Plaskey's response was to his requests, but I will infer for screening that Plaskey decided not to order new medication, a low-bunk restriction, or an extra pillow. But Plaskey ordered an X-ray at this appointment, and she had already prescribed several other medications. If a provider's decision not to order an X-ray fails to support a medical care claim, it follows that her decision to order one, coupled with a history of treating the prisoner's medical condition, doesn't either. *Cf. Estelle*, 429 U.S. at 107. Jordan alleges that he told Plaskey that his pain was stopping him from sleeping well at night a couple weeks later, but he doesn't specify her response. In any case, the analysis is the same:

considering the course of her care, Plaskey's failure to order different treatment didn't violate the Eighth Amendment.

I will not allow Jordan to proceed against Klein on his medical care claim. According to Jordan, Klein promptly answered his health services request and arranged for him to see Plaskey the next day. Jordan adds that, another time, Klein told him that he would have to see Plaskey after he asked Klein for a higher dose of his medications and a back brace. Klein's advice to see Plaskey (Jordan's provider) doesn't suggest that she disregarded his medical requests.

I will not allow Jordan to proceed against Plaskey based on the allegation that she prescribed capsaicin pain relief cream, "certain other meds," and physical therapy when he complained that celecoxib was ineffective and asked for different and stronger medications. Plaskey's failure to prescribe this treatment sooner doesn't support a medical care claim in view of her varied and active treatment of Jordan's medical condition. *See Estelle*, 429 U.S. at 107; *Cesal*, 851 F.3d at 723.

Jordan faults HSU for not ordering a low-bunk restriction. But, again, a medical provider's failure to order a prisoner's preferred treatment doesn't state a medical care claim. Jordan complains about being charged medical copays not exceeding $7.50 per visit. But "the imposition of a modest fee for medical services, standing alone, does not violate the Constitution." *Poole v. Isaacs*, 703 F.3d 1024, 1027 (7th Cir. 2012); *see also Cose v. Schrubbe*, No. 14-cv-540-jdp, 2020 WL 290940, at *2 n.1 (W.D. Wis. Jan. 21, 2020) (rejecting medical care claim based on allegation that prisoner failed to request further treatment because he didn't want to incur a $7.50 copay). Jordan has failed to allege that he couldn't pay this fee or that his inability to pay the fee stopped him from receiving medical care.

8

I will dismiss Jordan's medical care claim with prejudice. Jordan failed to cure the deficiencies that I identified in my screening order despite alleging new facts against new defendants. This case is similar to *Estelle*, where medical personnel saw the prisoner 17 times over a three-month period and provided a variety of treatment for, among other conditions, the prisoner's back strain. *See* 429 U.S. at 107. The prisoner in *Estelle* contended that "more should have been done by way of diagnosis and treatment," but the court held that the failure to order an X-ray and other forms of treatment didn't violate the Eighth Amendment. *Id.* It's clear from Jordan's allegations and the governing authorities that he cannot state a medical care claim based on the conduct he disputes. *See Bogie v. Rosenberg*, 705 F.3d 604, 608 (7th Cir. 2013).

When all federal claims have been dismissed, the general practice in federal court is to decline to exercise supplemental jurisdiction over the related state-law claims. *See Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994). Because I've dismissed Jordan's federal claim, I'll dismiss his Wisconsin-law medical negligence claim without evaluating whether it might state a claim. Jordan fails to establish that this court could exercise federal diversity jurisdiction over this claim because he alleges that he and defendants are Wisconsin citizens. Jordan may be able to pursue his medical negligence claim in state circuit court.

I will direct the clerk of court to record a strike under 28 U.S.C. § 1915(g). *See Boyd v. Bellin*, 835 F. App'x 886, 889 (7th Cir. 2021) (affirming district court's dismissal, which issued a strike based on plaintiff's failure to state a federal claim, and acknowledging relinquishment of supplemental jurisdiction over negligence claim); *Faust v. Parke*, 114 F.3d 1191, at *3 (7th

Cir. 1997) (counting dismissal as strike where all federal claims were dismissed and where court

declined to retain jurisdiction over state-law claim).


ORDER

IT IS ORDERED that:

1. Plaintiff Antwon Dylan Jordan's amended complaint, Dkt. 7, is DISMISSED with prejudice for failure to state a claim upon which relief may be granted.

2. Plaintiff's medical negligence claim is DISMISSED without prejudice because I decline to exercise supplemental jurisdiction over it.

3. The clerk of court is directed to record a strike under 28 U.S.C. § 1915(g), enter judgment, and send plaintiff copies of this order and the judgment.

Entered November 20, 2023.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge